MECHANICS & METALS NAT. BANK v. SMITH, as State Superintendent of Banks of South Dakota, et al.

District Court, D. South Dakota. May 27, 1927.

1. Contracts ⟨⟩ 101(2)—Contract against public policy of state will not be enforced, though valid at place made.

Contract against settled policy of state will not be enforced, although it may be valid at place where contract was made.

2. Contracts ⟨⟩ 108(1)—Only evidence of state's public policy are its Constitution, laws, and judicial decisions.

Only authentic admissible evidence of public policy of state on any given subject are its Constitution, laws, and judicial decisions.

3. Banks and banking ⟨⟩ 97—South Dakota banks held without power to put up collateral securing rediscounted notes (Rev. Code S. D. 1919, § 8984, as amended by Laws S. D. 1919, c. 124; Laws S. D. 1925, c. 92).

Under Rev. Code S. D. 1919, § 8984, as amended by Laws S. D. 1919, c. 124, banks are without power to put up collateral to secure notes rediscounted on theory that such rediscounting was merely a method of borrowing money, particularly in view of Laws S. D. 1925, c. 92, making exception in case of requirement therefor by rules of Federal Reserve Bank.

4. Banks and banking ⟨⟩ 74—Giving lien on collateral to cover previous notes rediscounted to lender constituted unlawful "preference," and was void.

Where, prior to bank's borrowing money and furnishing collateral as security, lender had rediscounted certain notes of borrowing bank, thereby creating relation of debtor and creditor, the subsequent giving of lien on collateral furnished for loan, so as to cover previous rediscount notes, constituted unlawful "preference," and was void.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Preference.]

5. Banks and banking ⟨⟩ 80(2)—Holder of rediscount notes from insolvent bank has separate and distinct claims on each unpaid rediscount.

Holder of rediscount notes secured from insolvent bank before its liquidation has as many distinct and separate claims as there are unpaid rediscounts, neither of which were dependent on, connected with, or affected by others, so as to facilitate the payment of dividends thereon.

6. Banks and banking ⟨⟩ 80(9)—Credit belonging to bank with correspondent bank, from whom it had borrowed money and rediscounted notes, will be applied to primary obligation (Rev. Code S. D. 1919, § 757).

Where, at time of bank's insolvency, it had credit with correspondent bank, to whom it had rediscounted notes and also borrowed money on collateral security, credit of such insolvent bank will, under Rev. Code S. D. 1919, § 757, be applied to payment of bank's primary obligation, rather than on contingent liability on rediscount.

In Equity. Action by the Mechanics & Metals National Bank against Fred R. Smith, as Superintendent of Banks of the State of South Dakota, and others. Decree in accordance with opinion.

Bailey & Voorhees, of Sioux Falls, S. D., for plaintiff.

Boyce, Warren & Fairbank, of Sioux Falls, S. D., for defendants.

ELLIOTT, District Judge. I have been very greatly interested in the issues presented in Re Mechanics & Metals National Bank, Plaintiff, v. Fred R. Smith, as Superintendent of Banks of the State of South Dakota, and the Sioux Falls Trust & Savings Bank of Sioux Falls, S. D., defendants.

The facts in this case are stipulated, and in substance are that the plaintiff is a national bank of New York City; that the Sioux Falls Trust & Savings Bank of Sioux Falls, at the times named in the complaint, was a South Dakota state banking corporation, located and doing business at Sioux Falls, S. D.; that on January 14, 1924, the affairs of said defendant bank were taken over by the defendant superintendent of banks of the state of South Dakota, and said superintendent ever since has been and now is in possession of the assets of said bank for the purpose of liquidation; the plaintiff bank filed its claim against the defendant bank, which claim was rejected by the superintendent of banks of the state of South Dakota. This suit is brought for the purpose of recovering upon the claim of the plaintiff against the Sioux Falls Trust & Savings Bank, the plaintiff claiming it is entitled to an allowance of all of the money represented by bills payable as hereinafter set forth, and also the entire amount of the notes rediscounted, being a total of $532,283.16; the plaintiff conceding that there is a credit to be applied of $41,-634.27.

It is stipulated: That "between the 28th day of August, 1923, and the 24th day of December, 1923, the Sioux Falls Trust & Savings Bank in due course of business redis-

counted with the plaintiff, Mechanics & Metals National Bank of New York, various promissory notes. That some of said notes contained in the body thereof a clause providing: 'The makers, indorsers, and guarantors hereon specially waive presentment for payment, protest, and notice of protest for nonpayment of this note, and consent to any extension or extensions of time of payment hereon which may be given by the said payee or its assigns to the makers, indorsers, or guarantors hereof, or to either of said makers, indorsers, or guarantors.' And they are indorsed with the straight indorsement of the said Sioux Falls Trust & Savings Bank."

It is further stipulated that others of the notes were collateral form notes containing in the body of the note the provision above quoted. It is further stipulated "that upon the 14th day of January, 1924, there was held by the plaintiff such rediscounted notes to the aggregate amount of $282,283.16." And there follows a list containing the names of the several makers of the notes, the dates of the notes, maturity, and the original amounts. It is further stipulated that "these rediscounts were made at different times between the 28th day of August, 1923, and the 24th day of December, 1923."

It is further stipulated "that on or about the 28th day of December, 1923, the Mechanics & Metals National Bank loaned to the Sioux Falls Trust & Savings Bank the sum of $250,000, for which a note in that amount was executed and delivered as set out in paragraph 5 of plaintiff's complaint; that as collateral security for the payment of the said note of $250,000 there was pledged by defendant Sioux Falls Trust & Savings Bank, with plaintiff, various promissory notes aggregating the sum of $175,995.24, also various tax sale certificates, aggregating the sum of $52,737.54, and also various city and county warrants aggregating the sum of $75,051.48," with a list of the names, amounts, dates, etc., as set out in the complaint.

It is further stipulated "that on the 14th day of January, 1924, there was due and owing from the defendant, Sioux Falls Trust & Savings Bank, to the plaintiff bank, for notes rediscounted under the indorsement of the said Sioux Falls Trust & Savings Bank, as aforesaid, the sum of $282,283.16, and for bills payable as aforesaid the sum of $250,000, making a total of $532,283.16, and that there was at that time in possession of the plaintiff in an open account a balance in favor of the defendant Sioux Falls Trust & Savings Bank, upon the books of the plaintiff, in the sum of $41,634.27."

21 F.(2d)—9

There follow certain stipulations with reference to payments that had been made that are not in dispute here and do not necessarily affect the issues submitted. There is also attached to the stipulation a schedule of all collections that have been made, both upon the notes rediscounted to the plaintiff bank, and also upon the collateral notes, and upon this there is no dispute, it being stipulated by counsel that upon the announcement of the law applicable computations can and will be made by counsel in accordance therewith.

The court finds the note for $250,000 set forth in full in the complaint, and defendants admit upon the trial that such note was given. This note is as follows:

"250,000.00. New York, December 28, 1923.

"March 10, 1924, after date, for value received, the undersigned jointly and severally promise to pay to the order of Mechanics & Metals National Bank of the city of New York (hereinafter called the bank), at its banking office in New York City, two hundred and fifty thousand dollars, in United States gold coin or its equivalent, having deposited with the bank as collateral security for the payment of this note or any note given in extension or renewal thereof, as well as for the payment of any other obligation or liability, direct or contingent, of the undersigned or any of them, to the bank, due or becoming due, whether not existing or hereafter arising."

Then follows the provision of the note for the carrying into effect the collection and application of the proceeds of the collateral notes to the payment of the $250,000. It was also provided, in substance, that after the payment of the $250,000, to appropriate and apply the proceeds of said collateral to the payment or extinguishment of any of the obligations or liability of the defendant bank then owing or thereafter contracted, and whether then due or not due, and provided further that "any of the moneys then or thereafter in the hands of the plaintiff bank, on deposit or otherwise, to the credit of or belonging to the undersigned or any of them, might be appropriated and applied by the plaintiff bank to any obligation of the defendant, whether due or not, whether the liability was primary or contingent."

The defendants object to the claim that was presented by the plaintiff bank for the total sum as above stated, and urge:

First. That the $250,000 borrowed by the defendant bank of the plaintiff bank, and evidenced by the note of $250,000, is a legitimate claim, upon the filing of a claim for that sum,

and offers to allow the same. Defendants further concede that the collateral security in the hands of the plaintiff bank is legitimately held as security for the payment of said $250,000.

Second. The defendants object to the claim that was presented for the various notes that were rediscounted at different times between the 23d day of August, 1923, and the 24th day of December, 1923, for the reason that the plaintiff simply presented one claim against the defendant bank for the entire principal sum of all of the rediscounts and money borrowed.

In this connection defendant insists that each note discounted by the defendant bank constituted a separate and distinct transaction and constitutes a claim against the defendant bank, and that there are as many claims upon rediscounted paper, against the defendant bank, as there were notes rediscounted, executed by different makers. Plaintiff contends that the rediscounting of these notes in the manner above set forth, by the defendant, upon these various dates, constituted a borrowing of money; that the purpose and effect of the transactions between these two banks was that the New York bank furnished the Sioux Falls bank money to be used in the business of the latter, whether it was furnished by the giving of a promissory note by the defendant bank, or the rediscount of paper with the indorsement and guaranty of the defendant bank, and urges that in either case the plaintiff bank loaned a specific amount to the defendant bank, and that the loan was secured either by collateral given for the payment of the obligation of the defendant bank, or by the transfer to the plaintiff bank of security owned by the defendant bank, with its indorsement or guaranty upon it.

Plaintiff urges that in either case the transaction was a loan pure and simple, and that this was the intention of the parties to the transactions, and urges that this, upon the stipulated facts, was the legal effect of these transactions, and that therefore, at the date of the failure of the defendant bank, January 14, 1924, there was owing to the plaintiff bank the sum of $532,283.16, from which should be deducted the sum of $41,634.27, the balance in the hands of the plaintiff bank belonging to the defendant bank, thus leaving a net indebtedness due plaintiff bank of $490,648.89, and asks that plaintiff's claim be allowed therefor, regardless of the collateral collected subsequent to the date of the closing of defendant bank. Plaintiff further urges that it is entitled to hold the collateral securities held by it as security for the $250,000 for the payment as well of the indebtedness represented by the rediscounted notes. The defendant admits the provisions of the promissory note for $250,000, and that they included authority to the plaintiff to make application of the proceeds of the collateral notes to the payment of the rediscounted notes.

Defendant, however, questions the validity of this attempted transfer of these collateral notes to the payment of the rediscounts and urges that it is a violation of section 8984 of the Revised Code 1919, as amended by chapter 124, Session Laws of 1919, which, defendant urges, makes a distinction between bills payable and rediscounted paper. Said chapter 124 provides that:

"No bank, banker or bank officer shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security." And: "Provided, further, that any bank may borrow for temporary purposes and may pledge the assets of the bank, not exceeding fifty per cent. in excess of the amount borrowed, as collateral security therefor: Provided, further, that whenever a bank issues its bills payable for borrowed money, it shall within five days after the execution thereof forward to the superintendent of banks a duly verified copy of such bills payable and of such collateral pledge of security as may have been issued therewith."

Nothing contained in this section shall prevent any bank from rediscounting in good faith and indorsing any of its negotiable paper: Provided, that whenever it shall appear that a bank is rediscounting habitually for the purpose of reloaning, the superintendent may require such bank to recall such rediscounts."

"In all cases where money is borrowed a bank shall issue its 'bills payable' and shall show the true amount of borrowed money on its books, and in all reports and statements required by the provisions of this chapter, under 'Bills Payable.'"

Plaintiff urges that there is nothing in these provisions of the South Dakota statute which prohibits the pledging of collaterals as security for the payment of rediscount notes, and that a proper construction of the statute discloses that it confers authority on banks in South Dakota to make such pledges of collaterals. In this connection plaintiff urges that the authorities are uniform to the effect that rediscounting and indorsing negotiable paper is simply a form of borrowing money. That said section 8984 expressly authorizes banks to borrow money and to pledge their assets as collateral security for the money bor-

rowed, and that the statute above quoted expressly authorized rediscounting and indorsing of negotiable paper, and gives the legislative stamp of approval to the method of borrowing long employed in the banking business. Counsel for plaintiff then cites the holdings of the courts, starting with Fleckner v. Bank of U. S., 8 Wheat. 338, 5 L. Ed. 631, to the effect that "by the language of the commercial world, and the settled practice of banks, a discount by a bank means, ex vi termini, a deduction or drawback made upon its advances or loans of money, upon negotiable paper, or other evidences of debt, payable at a future day, which are transferred to the bank," and urges that the decision in this case turns upon the doctrine that the rediscounting of commercial paper was only one form of loaning money by banks. Subsequent cases cited by plaintiff refer to the case of Fleckner v. Bank of U. S., supra.

[1-3] I have with care attempted to analyze all of these authorities, and am impressed that this determination reached by the courts was under circumstances differing materially from the situation that is presented in the case at bar. In none of the cases cited by plaintiff was there a state statute to interpret. The real question presented here is an interpretation of this statute of the state of South Dakota above set forth. It is clear that this statute expresses the policy of the state, and I am of the opinion that a contract against the settled public policy of the state will not be enforced, although it may be valid at the place where the contract was made. It is, therefore, no sufficient answer to defendants' position to say that the contract is valid in New York where it was made. Swann v. Swann (C. C.) 21 F. 299; 12 C. J. 438. The only authentic admissible evidence of the public policy of the state on any given subject are its Constitution, laws, and judicial decisions. It is conceded that the defendant bank was, at the dates in question, organized and existing as a state bank under and by virtue of the general banking laws of the state of South Dakota. There is no question but that the statutes of the state at the times named were as above set forth. It appears, therefore, that the statutes of the state of South Dakota specifically prescribe that no bank, banker, or bank officer shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security.

The same statute also provides that any bank may borrow money for temporary purposes and may pledge the assets of the bank, and in the same section prescribes the duty of the bank when it issues its bills payable for borrowed money, and requires that the same shall be reported to the superintendent of banks within five days after the execution of the note, with a copy of the bills payable and of the collateral pledged as security for the payment thereof. The statute goes further than that, and specifically recognizes the rediscounting of paper as an act separate and apart from the borrowing of money that has been provided for in the preceding section, and provides "that nothing contained in this section shall prevent any bank from rediscounting in good faith and indorsing any of its negotiable paper," with further provisions with reference to the power of the superintendent to recall such rediscounts. I am impressed that a reading of the provisions of the statutes of the state of South Dakota preclude the application to transactions by state banks in this state of the interpretation urged by plaintiff and sustained by authorities going back to In re Fleckner, supra.

There is nothing in the stipulation of facts that takes this rediscounting of paper out of the ordinary terms of "rediscounting in good faith and indorsing" as used in the South Dakota statute above quoted. A fair interpretation of these provisions of the South Dakota statute is made clearer by the further provision of the chapter above quoted, which provides:

"In all cases where money is borrowed a bank shall issue its 'bills payable' and shall show the true amount of borrowed money on its books, and in all reports and statements required by the provisions of this chapter, under 'Bills Payable.' "

As I have devoted time to this statute, I can find little to encourage one to question its meaning, and can find no foundation upon which to rest a finding that in this state rediscounting paper is merely a method of borrowing money. My attention is called to chapter 92 of the Laws of 1925, which provides:

"Nothing in this section shall prevent any bank from rediscounting in good faith and indorsing any of its negotiable paper, providing however, that except as it may otherwise be required by the rules of the federal reserve banks it shall be unlawful for any bank to pledge any of its assets as collateral security for the payment of such rediscounts, and any agreement or pledge whereby any of the assets of any bank shall be pledged as security for such rediscounts, shall be null and void."

This emphasizes the plain interpretation of the preceding sections. It is a matter of general information that this amendment was

thought necessary because of the requirements of the Federal Reserve Bank that collateral be put up to secure rediscounted paper. Our statutes as they stood prior to that time absolutely prohibited this practice, and in order to allow the banks of the state to rediscount their paper with the Federal Reserve Bank and put up collateral, this amendment was made to the statute. I am convinced that under the old law a South Dakota bank had no right to put up collateral to any rediscount, and therefore it could not sell its paper to the Federal Reserve Bank, and this amendment was passed for the sole purpose of allowing banks to sell notes and rediscounts to the Federal Reserve Bank and put up collateral therefor.

The construction to be placed upon these statutes of the state of South Dakota is not an open question. The Supreme Court of the state of South Dakota, in Re Hirning, as Superintendent of Banks, v. Toohey, City Treasurer, 207 N. W. 462, was first called upon to construe this statute. This is a case brought by the banking department of the state, in charge of a state bank, to recover assets theretofore turned over to the defendant, Toohey, as treasurer of the city of Sioux Falls, to secure a deposit of city funds. The city had a large deposit at the time of taking the securities, secured by personal bonds of the officers of the bank. They requested additional security, and at a meeting of the directors of the bank it was promised, and the notes pledged and delivered. Evidence was introduced outlining the bank's troubles and Toohey's knowledge of the bank's difficulties at the time he took additional security, and at the close of the testimony the trial court directed a verdict for plaintiff. Upon appeal, the question at issue was whether or not assigning the securities constituted a preference, unless the bank was actually insolvent at the time of the transaction. It was further contended in this case that there was no evidence that the bank was actually insolvent. The court then determines the question in the following language:

"We think the word 'preference,' as used in section 8984, is intended in its popular sense, and not in a technical sense. The section, read as a whole, indicates an intention to prohibit the pledging of the assets of a bank, except in certain specified instances, named in the several provisos, and to exclude all others without regard to the solvency of the bank at the time of the transaction. The section is a part of the law governing the organization and management of banks. It is intended to govern or control solvent and going banks. It is therefore immaterial in this case whether or not the bank was actually insolvent, constructively insolvent or solvent; the pledging of the bank's assets was illegal and void."

My attention was called on the part of the counsel for the plaintiff to the fact that there was a motion for rehearing pending at the time the case at bar was briefed. Under date of November 15, 1926, the motion for rehearing was denied by the Supreme Court, and is reported in 210 N. W. 723. The court there expresses itself with reference to the section in question here as follows: "Section 8984 is a part of the Banking Act applicable to state banks only, and its evident purpose is to control banks and banking operations. One of its restrictions forbids a state bank to secure deposits with its assets." This suggestion of the Supreme Court confirms the interpretation they had theretofore placed upon this section of the statute.

The District Court of the United States for the District of Minnesota, John B. Sanborn, District Judge, had occasion to consider this same section of our statute in Re Smith, State Public Examiner of Banks, et al. v. Continental State Bank of Minneapolis, Minn., 11 F.(2d) 907. Briefly stated the facts involved in this action were as follows: The defendant bank had certain certificates against the State Bank of Unityville, S. D., and presented them to the plaintiff bank and demanded payment. He was told that he could not pay the certificates; the reserve was impaired, and he was asked to renew them. An extension was given and the promissory notes named in the complaint were delivered as collateral security. Thereafter the plaintiff bank was taken over by the superintendent of banks, defendant presented the certificates, and they were not paid. Demand was duly made upon the defendant bank for the return of the collateral and its return was refused. Judge Sanborn, in this connection, in determining the question at issue, states:

"Under the laws of the state of South Dakota it was unlawful for the plaintiff bank to deliver these notes to Mr. Doyle for the purpose of securing the certificates of deposit of his bank, and the arrangement between it and that bank was therefore void. Mr. Appel was attempting to do a thing which the law prevented, and which both he and Mr. Doyle were presumed to know could not be done. * * * 'Business transactions, in violation of law, cannot be made the foundation of a valid contract.'" 11 F.(2d) 907, and citations.

[4] Independent of all of this there is the further reason why this transaction cannot be

sustained. It appears without dispute that these rediscount transactions were had between plaintiff and defendant banks between the dates above set forth, all of them prior to, and have no connection with, the borrowing of $250,000 by defendant bank, and the giving of the collateral notes to secure the same, containing the provision under which plaintiff claims the right to apply the proceeds in payment of the notes theretofore discounted. The relation of creditor and debtor existed between plaintiff and defendant banks under and by virtue of the contract of indorsement and guaranty made upon each separate note at the time it was rediscounted by the defendant bank to the plaintiff bank. The obligation of the defendant bank was exactly the obligation expressed and implied in such indorsement and guaranty upon each note thus rediscounted. With the rediscount of a particular note the defendant bank became a debtor to the plaintiff in the sum of the principal of the particular note and interest, contingent upon the failure of the maker to make the payment when due. This relation of debtor and creditor existed as to each rediscount immediately upon the indorsement of the same by the defendant bank and delivery to the plaintiff bank.

This applies to each and every rediscount held by the plaintiff bank at the time the note for $250,000 was given, and the lien of the collateral attempted to be given for the payment of the obligations theretofore assumed by the defendant bank at the different times the several notes were rediscounted. In other words, when this note for $250,000, containing the provision under which plaintiff claims, was given, the relation of debtor and creditor existed between defendant and plaintiff banks as to each separate note that had theretofore been indorsed and rediscounted, which embraces all of the rediscounts involved in this proceeding. Independent, therefore, of what has been said as to a distinction between moneys borrowed and notes rediscounted, the plaintiff was a creditor of the defendant bank, and when the provision was inserted in the $250,000 note, applying or attempting to apply the collateral then deposited as security for that note to the payment of the defaults of the makers of the notes rediscounted, the defendant bank was giving a preference to a *creditor* by pledging the assets of the bank as collateral security for existing debts.

There is no pretense that the rediscounting of any of the notes in question had any connection with the transaction whereby the defendant bank borrowed $250,000 from the plaintiff bank, and while the statute permits the borrowing of money for temporary purposes and authorized the pledging of assets of the bank, not exceeding 50 per cent., to secure the same, it does not authorize the giving of a preference to a creditor who has theretofore advanced money and become a creditor of the bank. Upon the stipulated facts this plaintiff, at the time of making the contract in question, was a creditor of the defendant bank, and the giving of a lien upon this collateral constituted an unlawful preference, and was void, and upon the payment of the $250,000 the defendant is entitled to the return of the collateral.

In Stapylton v. Stockton et al. (C. C. A.) 91 F. 326, section 5242 of the Revised Statutes of the United States (Comp. St. § 9834) was being interpreted, and in that case there was an agreement made and collateral deposited for money then advanced, and as a part of the same transaction it was agreed that the collateral then given should also stand as security for an antecedent indebtedness to the party making the loan. This agreement was held invalid under this section, R. S. U. S., in so far as it attempted to give security for the pre-existing debt, although it was further held that it did not deprive the person making the loan of the right to the security to the extent of his present advances. This interpretation of this section of the Revised Statutes of the United States is in harmony with the foregoing interpretation of the South Dakota statute, in that it recognizes the right of the bank to give collateral, and of the lender to hold the same, as security for the payment of moneys immediately advanced, but an agreement extending the lien as security for the payment of an indebtedness theretofore incurred is invalid.

[5] As above suggested, I am of the opinion that each rediscount constituted a distinct and separate contract between the plaintiff bank and the defendant bank, and the liability of the defendant bank was contingent, and dependent upon the default of the maker of the note, and that liability in no way affected by the failure of the maker of any other rediscounted note. It follows that the plaintiff, at the time of the failure of the defendant bank, had as many distinct and separate claims against the defendant bank as it had unpaid rediscounts, neither of which was in any way dependent upon, connected with, or affected by, either of the others, and therefore a separate claim should have been executed by the plaintiff bank upon each of its causes of action against the defendant bank. This is true, not only because each note represents a distinct and separate transaction, in no way con-

nected with any other transaction, but further because of the impracticability or impossibility of applying the rule applicable in the payment of dividends which I shall hereafter refer to.

Plaintiff and defendant seem to agree upon the important question as to the application of dividends to its creditors out of the assets of the defendant bank. It is conceded that "a creditor may prove for, and receive dividends upon, the full amount of his claim regardless of any sums received from his collateral after the transfer of the assets from the debtor in insolvency, provided that he shall not receive more than the full amount due him."

While decisions of the state courts have not been uniform upon the subject, the rule as stated in Merrill v. National Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640, is the rule adopted generally by federal courts, to wit: "A secured creditor of an insolvent national bank may prove and receive dividends upon the face of his claim as it stood at the time of the declaration of insolvency, without crediting either his collaterals, or collections made therefrom after such declaration, subject always to the proviso that dividends must cease when, from them and from collaterals realized, the claim has been paid in full."

This emphasizes the necessity of a separate claim being filed by the plaintiff upon each of the rediscounts; otherwise it would be impossible to cease the payment of dividends when the claim has been paid in full, and the law would have to be administered with reference to all of the claims, which I do not understand to be the policy of the law. Each is a separate claim and plaintiff is entitled to the payment of the dividends based upon the face of the claim, regardless of payments that have been made since the 14th of January, 1924, until such time as the payments and dividends pay the claim in full, and there must necessarily be an accounting and statement as to each of these rediscounted notes at the time of the declaration of a dividend.

[6] There is the further question of the proper application of credit by the plaintiff of the $41,000 belonging to the defendant bank that was on deposit with the plaintiff at the time the defendant bank closed, on January 14, 1924. It is conclusively shown by the stipulation that plaintiff applied it nowhere, but has simply held it to be applied to the entire amount claimed by plaintiff from defendant. It was not applied to any rediscounted paper, because if it had been the paper so paid

should and would have been returned by plaintiff to defendant bank. Nor was it applied by plaintiff bank toward the payment of the $250,000 note, because, had there been a credit given upon that note, the plaintiff would not have been claiming dividends upon the full face of the note, and defendant bank would have been entitled to a set-off as of the time of the closing of the bank and the claim of the plaintiff reduced in that sum. No application having been made of this money, it becomes the duty of the court to apply it, having in view the provisions of section 757, of the Revised Code of 1919, of the state of South Dakota. The rule seems to be well established that under a statute like this it becomes the duty of the court to apply this sum to the payment of the primary obligation of the debtor rather than a contingent liability, and where a debtor owes a creditor a primary obligation and a secondary or contingent obligation, the application must be made upon the primary obligation.

The rule applicable is thus stated in 36 Cyc. 1248: "As between certain debts and contingent liabilities the law applies payment to the former rather than the latter." "A general payment is always to be applied * * * to a debt due by the payer absolutely as principal, rather than one due contingently or collaterally, or held as collateral security." 1 Am. Lead. Cases, 277.

It follows, therefore, that plaintiff is entitled to dividends upon the amount due upon its note for borrowed money, less the cash deposit of $41,000 on hand at the time of the cut-off, until such time as dividends and collateral collections pay this note in full. Defendant is thereupon entitled to the return of the note and unpaid collateral notes, and in event there is in the hands of the plaintiff more money from these sources than enough to pay the note, the balance should be forwarded by plaintiff to defendant with said notes.

The plaintiff is entitled, upon the filing of separate claim for each rediscount note to dividends upon the full amount of said rediscount, without deducting the payments made by the maker after January 14, 1924, until such time as such payments and dividends pay the note in full, when payments of dividends thereon must cease, as in no event must there be paid a dividend in excess of the amount due upon the note at the time of its payment. It follows, also, that upon the payment of a rediscount in full by the application of dividends the note should be returned by plaintiff to defendant.

In accordance with the suggestions of

counsel in their briefs, the court having passed upon the legal propositions involved and indicated the nature of the decree which is to be entered in the case, I assume that additional stipulations will be entered into by counsel for plaintiff and defendants covering the payments made between the date of the stipulation now on file and the date of the entry of the decree, upon collateral securities held by the plaintiff, and that counsel will agree upon the amounts herein involved, as it is a mere matter of computation.

A proper decree may then be prepared and presented, with an exception to the plaintiff.