**STATE OF ARKANSAS et al. v. PUFAHL.**
**No. 9099.**

Circuit Court of Appeals, Eighth Circuit.

Aug. 27, 1931.

Samuel Frauenthal, of Little Rock, Ark. (John A. Sherrill and Ector R. Johnson, both of Little Rock, Ark., on the brief), for appellants.

Jesse Reynolds, of Clarksville, Ark., for appellee.

Before KENYON and BOOTH, Circuit Judges, and DEWEY, District Judge.

DEWEY, District Judge.

This case is brought to determine whether the state of Arkansas or its assignee is entitled to dividends from the receiver of the First National Bank at Clarksville, Ark., on the aggregate of three separate deposits in said bank; one of such deposits being secured by government bonds and the others by surety companies.

The First National Bank of Clarksville, Ark., was designated by the state treasurer under the laws of the state as a state depository on May 18, 1929. On that date a written contract covering the terms of the deposit was entered into between the bank and the state treasurer providing for a deposit in the sum of $25,000. As security for said deposit, the bank transferred to the state four Liberty Loan bonds of the face value of $25,000. On May 20, 1929, a second contract was entered into providing for a deposit of $15,000, and such deposit was secured by a corporate surety bond executed by the United States Fidelity & Guaranty Company. On June 4, 1929, a third contract providing for a deposit in the sum of $10,000 was entered into, and as security therefor a bond in the sum of $10,000 was executed by the Ætna Casualty & Surety Company as surety. Deposits were made in accordance with these contracts, and none of the funds so deposited were ever withdrawn by the state,

and said bonds and contracts were in force and the government bonds still held by the state of Arkansas when the bank was closed by the Comptroller of the Currency on November 14, 1929, and M. J. Pufahl was appointed receiver on November 30, 1929.

On March 8, 1930, the treasurer on behalf of the state filed a claim with the receiver for a balance due on account as per three contracts thereto attached, with interest, amounting to $50,529.22. With the claim was a letter in which the treasurer claimed that the state was entitled to a dividend upon the face of its claim as it stood at the time of the declaration of insolvency, subject, of course, to the ceasing of dividends when the claim had been paid in full with such dividends and the proceeds of collaterals, which he proposed to sell at the market price. The receiver refused to file this claim, and advised the treasurer that he would be required to sell the bonds and apply the proceeds in accordance with the provisions of the $25,000 contract of deposit and could then file his claim for the balance. On March 10, 1930, the claim of the state of Arkansas against the bank was assigned to J. A. Sherrill, as trustee for the two surety companies, and on the same afternoon, but subsequent to the execution of the assignment, the state treasurer sold the government bonds, which he held as security, for $26,349.82, crediting the bank with the principal and interest due on the $25,000 indebtedness and turned over the balance of $1,078.86 to the receiver. Also, on March 8, 1930, the treasurer collected $15,160 from the United States Fidelity & Guaranty Company and $10,106.63 from the Ætna Casualty & Surety Company, which paid the claim of the state of Arkansas against the First National Bank of Clarksville in full. Neither the bonds nor the proceeds thereof were at any time turned over to the trustee, J. A. Sherrill. The trustee requested the treasurer to pay all surplus from the sale of the Liberty bonds to him, but this was refused because the receiver had asked for the surplus, and it was a part of the agreement under which the assignment was made that the state was to retain and sell the Liberty bonds and apply the proceeds to the indebtedness of the First National Bank of Clarksville.

On June 6, 1930, J. A. Sherrill, as trustee, joining with him the state of Arkansas, filed their bill of complaint in the District Court of the United States for the Western District of Arkansas against M. J. Pufahl, as receiver, with claims similar to those made on this appeal, and praying that said receiver be ordered and directed to return to plaintiffs $1,078.86 now held by him as the balance of the sale price of the Liberty bonds pledged as security to the state of Arkansas, and further ordered and directed to accept the proof of claim tendered and make distribution of dividends upon said claim until the plaintiffs have received from said dividends and the sale of the Liberty bonds the full amount of their claim of $50,529.22 with interest.

The decree of the trial court provided that the receiver be directed to receive and allow the claim of the plaintiffs for the sum of $15,000 with accrued interest on the contract dated May 20, 1929, and an additional claim of $10,000 with accrued interest on the contract dated June 4, 1929, and that he pay dividends to the plaintiff J. A. Sherrill, trustee, upon said claims when so allowed, that the plaintiffs were not entitled to an allowance of a single claim for $50,000 with interest, and the prayer for an allowance of a claim in this amount against the receiver was disallowed.

It is held in the case of Merrill v. Nat. Bank of Jacksonville, 173 U. S. 131, 19 S. Ct. 360, 366, 43 L. Ed. 640, that a secured creditor of an insolvent national bank may prove and receive dividends upon the face of his claim as it stood at the time of the declaration of insolvency without crediting either his collaterals or collections made therefor after such declaration, subject always to the proviso that dividends must cease when from them and from collaterals realized the claim has been paid in full. And "the secured creditor cannot be charged with the estimated value of the collateral, or be compelled to exhaust it before enforcing his direct remedies against the debtor, or to surrender it as a condition thereto, though the receiver may redeem or be subrogated as circumstances may require." And this rule has been followed by the federal courts. Aldrich v. Chemical Nat. Bank; 176 U. S. 618, 638, 20 S. Ct. 498, 44 L. Ed. 611; Washington-Alaska Bank v. Dexter Horton Nat. Bank (C. C. A.) 263 F. 304, 311; Mechanics & Metals Nat. Bank v. Smith (D. C.) 21 F. (2d) 128, 134. But the Merrill Case does not hold that the collateral was security for both the note which it was given to secure and a debt due on "sundry drafts." The court in stating that the collateral is security for the whole debt had reference to the debt secured by the collateral. The decree of the Circuit Court of Appeals (78 F. 208) provided that the receiver should pay the dividends to the Palat-

ka bank on the $10,093.34, the amount of the note secured, and also on the indebtedness created by the sundry drafts "provided the dividends theretofore paid and thereafter to be paid on the sum of $10,093.34, together with the amounts theretofore and thereafter received on the collaterals securing that indebtedness, should not exceed 100 cents on the dollar of the principal and interest of said debt;" and it was this decree which was affirmed by the Supreme Court.

■ Where securities are pledged to a creditor to secure the payment of a particular loan or debt, the creditor cannot hold such collateral to secure the payment of any other claim or indebtedness than the one for which they were specifically pledged. It is a special deposit or pledge for a special purpose, and, when that purpose is accomplished, the lien ceases to exist. A general lien in such a case would be inconsistent with the special undertaking. Reynes v. Dumont, 130 U. S. 354, 9 S. Ct. 486, 32 L. Ed. 934; Armstrong v. Chemical Nat. Bank (C. C.) 41 F. 234, 6 L. R. A. 226; 3 R. C. L. § 214, p. 584. In Mechanics & Metals Nat. Bank v. Smith (D. C.) 21 F.(2d) 128, 134, Judge Elliott held that, where a note was given by a bank, which afterwards became insolvent, secured by various promissory notes, tax certificates, and county warrants, and the creditor held at the same time a large number of rediscount notes, but under separate transactions, the claim on the promissory note and claims on the secondary liability under the rediscount paper must be filed with a receiver as separate claims; one reason therefor being that under the doctrine of the Merrill Case dividends could only be paid in an amount to pay each claim in full, taking into consideration the value of each individual rediscount note, and a general claim could not be filed for the full amount of all the indebtedness.

It is the contention of appellants that the $50,000 deposit in the bank at the time of the insolvency represented but one indebtedness, and that the three deposits made under the contracts and bonds created one single running account, and the state had but one claim against the receiver upon the closing of the bank for the balance due upon the account as it existed at the time of the appointment of a receiver, that all of the securities were jointly and severally liable for the entire amount of the claim of the state against the bank, and that the state of Arkansas was entitled to dividends on the entire amount of its claims aggregating $50,000 and accrued interest sufficient to pay the same less the value of collateral held by it in United States government bonds. It is the contention of the appellee that the three deposits were not a common obligation, and that the securities were severally liable only for the amount of the deposits secured severally by each of them, and that the debt of the state has been paid in full.

■ There is a clear distinction between the debt and the contract of suretyship. The $50,000 deposited at different times with the bank may be one debt as between the state and the bank, and still the contract of suretyship for the $25,000 would be valid and binding as to a moiety thereof, if that was the clear intention of the parties. Assets Realization Co. v. American Bonding Co., 88 Ohio St. 216, 102 N. E. 719, Ann. Cas. 1915A, 1194. We may disregard then the question of whether the $50,000 aggregate deposit represented for some purposes one or three debts or obligations from the bank to the state of Arkansas; for, if the bonds can under the express terms of the contract only be used to pay $25,000 of that indebtedness, then the receiver had the right to demand the satisfaction of that part of the debt from the proceeds of the bonds and that the balance be paid to him.

■ The question of what property or funds are intended to be covered by the suretyship contract must depend upon the terms of the contract. 50 C. J. 85.

The statutory laws of the state of Arkansas with reference to the selection of depositories for state funds provide (Crawford & Moses' Dig. Ark. § 4507 et seq., as amended), among other things, that there should be constituted a state depository board. This board might receive and consider applications from banks for the privilege of being designated state depositories for a two-year period, and any bank that so desired might apply for and receive the necessary blanks for that purpose, that such state depository board might make such reasonable rules and regulations as seem proper and necessary for the purposes of the act, but that on the approval of any application and before any funds shall be advanced or deposited with any applicant "a good and sufficient bond legally authorized and executed and having as surety thereon, * * * qualified to do business in Arkansas * * * shall be filed with the Secretary of said board [the State Treasurer], and conditioned for the apt and full repayment of any funds and interest thereon so advanced and deposited as contemplated in this Act; provided, that the said

bond shall be drawn as to cover no less than the greatest amount of money in said depository at any time during the enjoyment of the benefits as such [money], and, provided further, that bonds of the United States Government * * * may be accepted in lieu of surety bond." Acts Ark. 1929, p. 1034.

The First National Bank of Clarksville having been duly designated as a depository for a deposit of $25,000 executed a bond evidently on a printed form furnished by the board and which complied with the laws of the state, and at the same time executed a contract, which also evidently was in accordance with a form contract prepared under authority of the depository board. The three bonds and the three contracts are similar except that in lieu of a bond where the United States bonds were deposited was a transfer and assignment of such bonds as security and providing, among other things: "In the event of any default * * * The Treasurer of the State of Arkansas * * * is hereby authorized and empowered to and shall sell at public outcry said bonds and securities, or so much thereof as may be necessary to liquidate the balance due the State of Arkansas, and all costs, * * * upon two weeks' notice. * * * The proceeds of said sale shall be applied, first, to the payment of the costs of said proceedings; second, the balance due the State of Arkansas; and third, the surplus, if any, to said banking institution." The bonds securing the other deposits and the written transfer and assignment of the United States bonds were all conditioned in accordance with the requirements of the state statute, and each of the bonds provided, among other things, as follows: "Now, if said First National Bank shall safely keep and promptly account for and pay over upon the check or checks of the State Treasurer, all public funds that may be deposited with it, together with interest thereon to date of final payment of principal, in accordance with the contract made and entered into this day, * * * and shall perform all obligations imposed upon it by law, then this obligation shall be void. * * * Liability under this bond shall be co-extensive with the contract which it secures. * * *" And each contract executed at the time of and covering said bond and deposit provided, among other things: "Therefore said First National Bank, hereby, accepts said designation and agrees to receive all deposit of public funds that may be offered it by the State Treasurer * * * not to exceed the sum of ($25,000, $15,000 and $10,000 in the re-spective contracts) * * * to pay interest on the average daily balances * * * said interest to be paid monthly upon receipt of a statement from the State Treasurer; * * * to keep a just and true account of all such funds received, and furnish a true statement thereof to the State Treasurer at the end of each month, showing the amount of the balance due the State Treasurer. * * *"

It is necessary to set out these portions of the laws of the state of Arkansas, the bonds and the contracts, as it is the serious contention of the appellants that not only do the bonds and contracts provide that each bond given shall cover the greatest amount of money in the depository at any time, but, interpreted in the light of the provisions of the statutes, each bond and each security was liable for the greatest amount of money on deposit in the bank at any time, and therefore all deposits made with the bank by the state during the existence of the bonds and the contracts were covered by each bond and security, and that the several deposits constituted but one debt and account due from the bank to the state of Arkansas.

There is no question as to the law relied upon by appellants that, where a contract is entered into pursuant to a statute, such statute forms a part of the contract so as to be construed in connection therewith, Ætna Casualty & Surety Co. v. Henslee, 163 Ark. 494, 260 S. W. 414; but the statute under which the contract is made will not be construed as to enlarge the surety's liability beyond the terms of his contract, 50 C. J. 78; Milliron v. Dittman, 180 Cal. 443, 181 P. 779; C. H. Albers Commission Co. v. Spencer, 236 Mo. 608, 139 S. W. 321, Ann. Cas. 1912D, 705; Wood v. Fisk, 63 N. Y. 245, 20 Am. Rep. 528.

The terms of the bonds provide that they are to be coextensive in liability with the contract which they secured, and each contract very expressly creates a liability not to exceed a certain amount. We are unable to read into the law of the written instruments executed the agreements suggested by the appellants, even in the light of the rule laid down by the Supreme Court of Arkansas. The conditions which the act requires "for the apt and full repayment of any funds and interest thereon so advanced and deposited as contemplated in this Act" are found in the bond. The further statement in the law that the surety bonds should be drawn so as to cover no less than the greatest amount of money in said depository was directory only, and meant no more than that the bonds

should be in an amount equal to the amount of the deposit authorized. There is no requirement in the law that the required bond be equal to the greatest amount that could be designated or authorized under the statute, nor does the law provide for one designation and one security. Neither would it make any difference whether the state treasurer, as testified to by him, considered all of the deposits in any one bank but one deposit and account. Under the terms of the contract it was the bank that was to be responsible and make an accounting as to each one of these funds deposited, keep a just and true account thereof, and furnish a true statement thereof to the state treasurer at the end of each month. The state of Arkansas was interested only in having the funds on deposit by it with any particular bank properly secured to the full amount of such deposit and so required such security by statute.

The contract for the $25,000 deposit needs no interpretation. The intentions of the parties as to the liability are therein expressly stated, and by its provisions, in the event of a default, the Liberty bonds were to be sold, and, after satisfying the $25,000 debt, the balance paid to the bank. The same parties later when other deposits were made protected the full amount of such deposits with other security. On the amount of the liability as to the $25,000 deposit there can be no question. Sureties who are bound for a common principal to insure the performance of the same duty or obligation are cosureties, United States Fidelity & Guaranty Co. v. Naylor, 237 F. 314 (8th C. C. A.), but not if the obligations are different, as where they are bound for different portions of the same debt, Assets Realization Co. v. American Bonding Co., supra.

We can see no escape from the conclusion that the contract of security as to the $25,000 covered that deposit only, that the Liberty bonds were given to protect liability thereon only, and that the contract of suretyship cannot be extended to hold the Liberty bonds as security for the entire indebtedness of $50,000 and interest.

It follows that the state had no right or interest or claim on the $25,000 deposit at the time this suit was instituted, and no rights thereunder passed by the assignment. The surety companies on payment of their surety obligations were subrogated to any and all rights that the state of Arkansas had in the trust funds held by the receiver. This right was preserved to them by the decree, which is hereby affirmed.